[No. 35562.   *En Banc.*   January 12, 1962.]

THE STATE OF WASHINGTON, *Respondent*, v. PAUL G.
HEFFERNAN *et al.*, *Appellants.**

*Martin L. Potter*, for appellants.

*John G. McCutcheon* and *Schuyler J. Witt*, for respond-
ent.

ROSELLINI, J.—The appellants were charged with the
offense of carnal knowledge, under RCW 9.79.020, and were
found guilty by a jury. On appeal, they allege several errors
in the proceedings. For the most part, the allegations are
lacking in any merit and do not warrant discussion, but

*Reported in 367 P. (2d) 848.

one of the contentions has such a substantial basis that a new trial must be ordered.

In this assignment of error, the appellants contend that the court erred in not granting a mistrial, which was requested by the appellants after the following incident had transpired:

The respondent put on the stand as its witness a doctor who had examined the complaining witness on the night following the attacks which she alleged had been made upon her by the appellants. The doctor testified that he did not find any pelvic abnormality or any visible foreign substance. He further testified that he took a vaginal smear and left it, together with a routine laboratory slip upon which the slide was identified, to be taken to the laboratory by a nurse. The doctor later received a report on the slide, he said. He had no knowledge of the number of people who had handled the slide after he put it aside for the nurse.

The laboratory technician was then called, and after his qualifications were established, he described the procedure for determining the presence of spermatozoa, and testified that he had performed such a test in response to a requisition from the doctor who had earlier testified. He was then asked what notation he made after the test, but the objection of the appellants was sustained. Although the court ruled that the witness could not testify further concerning the results of his test until the slide was properly identified, it refused to grant the appellants' motion for a mistrial.

The respondent did not call the nurse who was supposed to have taken the slide, made out the requisition for the analysis, and presented it to the laboratory technician. No further evidence was offered to identify the slide on which he made his report.

It is the contention of the appellants that, at this point, the jury had received a clear impression that spermatozoa were found in the vaginal smear, although there was no direct testimony that such was the case, and we think this can hardly be gainsaid. Undoubtedly the jury must have reasoned that the answer of the technician, had he been allowed to testify, would have been that spermatozoa were

found, as the state surely would not have called the witness if this were not the expected answer. It is also unlikely that they would doubt that the slide was the one submitted by the doctor who examined the complaining witness.

■ Since the slide which was examined by the laboratory technician contained no identifying marks and was handled by at least one other person before he received it, a person who was not present to identify the slide and was not available for cross-examination, the court properly refused to allow testimony as to the results of the test. See *San Juan Cy. v. Hage,* 54 Wn. (2d) 419, 341 P. (2d) 872.

■ However, the court was not obliged to declare a mistrial at that point, since the respondent was entitled to an opportunity to produce the witness or witnesses who could complete the identification. When it failed to do so, however, we think a mistrial should have been granted, for this reason: The evidence was in considerable conflict, and the jury could well have found the uncorroborated testimony of the complaining witness implausible. It could well have been that the inference which the jury most probably drew from the testimony of the laboratory technician was the determining factor which convinced it of the guilt of the appellants.

If it were reasonable to suppose that an instruction to disregard this testimony would have removed its effect from the minds of the jury, the appellants, having failed to request such an instruction, would be foreclosed at this point. But we think the impression created by this evidence was ineradicable from the minds of reasonable men. So compelling was the inference which it called forth that the members of this court find it difficult, if not impossible, to disregard it. We must conclude that an instruction, no matter how framed, could not have prevented the mischief. In such a case, a new trial is the only adequate remedy. A similar question was thus determined in *State v. Albutt,* 99 Wash. 253, 169 Pac. 584.

We have no doubt but that the prosecutor acted in good faith in presenting this witness and that he was taken by surprise when it developed that the laboratory technician

was unable to identify the slide. But a holding that no prejudice to the appellants resulted from the introduction of his testimony might well encourage another to think that this is a convenient device for implanting a conviction in the minds of the jurors without the necessity of producing legally sufficient evidence. We do not, however, decide the appeal in favor of the appellants simply to discourage the use of such a device, but because we are convinced that a fair trial was impossible, once the testimony had been admitted, in view of the fact that the slide was never identified.

The judgment is reversed and the cause remanded for a new trial.

FINLEY, C. J., DONWORTH, WEAVER, and HUNTER, JJ., concur.

OTT, J. (dissenting)—I dissent for the following reasons:

(1) During the trial, a smear slide taken approximately twenty-four hours after the offense was marked for identification. Upon appellants' objection thereto, the slide was not admitted into evidence. The appellants did not thereafter request that the expert's testimony with reference to the slide be stricken and the jury instructed to disregard it. The majority state in this regard that

"If it were reasonable to suppose that an instruction to disregard this testimony would have removed its effect from the minds of the jury, the appellants, having failed to request such an instruction, would be foreclosed at this point."

With this statement, I agree. However, the majority further state:

". . . But we think the impression created by this evidence was ineradicable from the minds of reasonable men. . . . We must conclude that an instruction, *no matter how framed*, could not have prevented the mischief. In such a case, a new trial is the only adequate remedy." (Italics mine.)

With this statement, I disagree. A trial by jury in criminal cases is fundamental in our democratic system of jurisprudence. Amendment 6, United States Constitution; Art 1,

§ 22, state constitution. Each juror, upon assuming the duties of office, takes a solemn oath that he will follow the court's instructions and decide the case upon the instructions and the evidence. For a majority of this court to hold that jurors do not follow the court's instructions, and will not disregard evidence when instructed by the court to do so, is to hold that jurors cannot be trusted; that they violate their oath of office, and that our jury system is an utter and complete failure. This court has consistently held that jurors are presumed to follow the court's instructions. *State v. Kelsey*, 46 Wn. (2d) 617, 283 P. (2d) 982 (1955), and cases cited.

The majority cite *State v. Albutt*, 99 Wash. 253, 169 Pac. 584 (1917), in support of their contention. In the cited case, a general instruction was given relating to all objectionable evidence. With reference to the sufficiency of a general instruction, this court said:

"When incompetent evidence is erroneously permitted to go to a jury, and an attempt is subsequently made to withdraw it from their consideration, *the direction of the court should be plain and specific—if the harm done is to be avoided.* . . ." (Italics mine.)

According to the cited decision, a specific instruction to disregard the harmful testimony would have been sufficient. The case does not support the majority's determination.

From my reading of the record, there is no basis for the assumption on the part of this court that the jurors empaneled to try this case in any manner violated their oath of office, and the presumption that they would have followed the court's instructions must stand.

(2) The expert's questioned testimony was not material to establish any element of the crime. The sordid details of the manner in which the appellants perpetrated the crime upon the 15-year-old complaining witness included many felonious instances of penetration. Penetration alone is the gravamen of the offense, and whether discharge followed as a result of the penetration is immaterial. The jury chose to believe the evidence of the complaining witness that she had been ravished sexually by two of the appellants, and

that the third aided and abetted the other two in the commission of the offense, and returned a verdict accordingly.

(3) Finally, the majority hold that "The evidence was in considerable conflict, and the jury could well have found the uncorroborated testimony of the complaining witness implausible."

· I agree that the evidence was in conflict, and that there was no corroboration of the complaining witness as to the fact of intercourse itself. Corroboration in such cases is, by statute, not required, and the jury was so instructed. The complaining witness' girl companion testified to having seen the complaining witness lying stark naked on the bed at three o'clock in the morning; that the three appellants were standing beside her, and that she was crying when her companion entered the room. This evidence, together with that of the complaining witness relating to the forcible disrobing and repeated assaults by the appellants (aged 19, 21, and 22) during a considerable period of time, is certainly plausible, and the jury, exercising their discretion, so found.

In my opinion, the appellants had a fair and impartial trial by jury, and the judgments and sentences based upon the verdicts should be affirmed.

MALLERY and FOSTER, JJ., concur with OTT, J.

HILL, J. (dissenting)—Believing that defendants had a fair trial, and that the conviction should be affirmed. I dissent.